# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM M. RODDY,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-11-S-4355-NW** |
| | ) | |
| **CITY OF SHEFFIELD,** | ) | |
| **ALABAMA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, William M. Roddy and Wendy Sue Roddy, allege that various defendants violated their federal- and state-law rights during a series of events that stemmed from a search of plaintiffs' hotel room, and which resulted in the arrest of plaintiffs.[1]  Plaintiffs assert claims under the United States Constitution and 42 U.S.C. § 1983 against the so-called "Huntsville defendants"[2] for an illegal search, for

---

[1] Doc. no. 26 (Amended Complaint).

[2] Plaintiffs define the "Huntsville defendants" to indicate the City of Huntsville, Alabama and three individual defendants: *i.e.*, Jason M. Ramsey, Terry Lucas, and Eddie McDaniel. *Id.* ¶ 9.  Although plaintiffs assert that Officers Ramsey and Lucas were police officers employed by the City of Huntsville at all times relevant to their allegations, *id.* ¶¶ 6-7, it is not clear from the amended complaint that defendant Eddie McDaniel was, in fact, employed by the City of Huntsville at any time.  *See id.* ¶ 8 (alleging that defendant McDaniel "was employed by Huntsville *or other law enforcement organization* as a police officer assigned to the STAC Unit at all times relevant to the allegations in this complaint") (emphasis supplied).  In his motion to dismiss plaintiffs' claims against him, defendant McDaniel argues that he has been a *Deputy Sheriff* employed by the Sheriff of *Madison County*, Alabama since October of 1997.  Doc. no. 36 (Brief in Support of Motion to Dismiss), at 7.  Plaintiffs do not dispute the truth of that assertion.  *See* doc. no. 45 (Response to Motion to Dismiss), at 1-2.

unlawful seizure, arrest, and imprisonment, and for use of excessive force in effecting the arrests of plaintiffs.[3]   Further, plaintiffs assert supplemental state-law claims against "Huntsville"[4] for false arrest/false imprisonment, excessive force, malicious prosecution, conversion, and outrage.[5]   The case is before the court on the motion of defendant Eddie McDaniel to dismiss the claims against him.[6]   Upon consideration, the state-law claims against defendant McDaniel will be dismissed *with* prejudice for lack of subject matter jurisdiction, and the federal-law claims against him will be dismissed *without* prejudice for failure to comply with federal pleading standards.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a

---

Plaintiffs' *original* complaint also asserted claims against four additional Huntsville police officers:  *i.e.*, Clarence M. Thornberry, Brett McCulley, Dewayne McCarver, and Anthony E. McElyea.  *See* doc. no. 1 (Complaint).  However, this court dismissed *with* prejudice the claims against those defendants, pursuant to plaintiffs' motion for dismissal of the claims against Officer Thornberry, and the parties' joint stipulation of dismissal of the claims against Officers McCulley, McCarver, and McElyea.  *See* doc. nos. 14 (Motion to Dismiss); 16 (Order Dismissing Fewer than All Defendants); 17 (Stipulation of Dismissal); 18 (Order Entered February 21, 2012).  Further, plaintiffs' *amended* complaint originally asserted claims against the City of Sheffield, but this court dismissed those claims *without* prejudice pursuant to the parties' joint stipulation of dismissal.  *See* doc. nos. 27 (Stipulation of Dismissal), 28 (Order Entered March 30, 2012).

[3] Doc. no. 26 (Amended Complaint) ¶¶ 34-48.

[4] It is not clear whether plaintiffs intend "Huntsville" to indicate the so-called "Huntsville defendants" or the City of Huntsville.  This court will assume that plaintiffs mean the Huntsville defendants, and address the arguments in favor of dismissing the state-law claims against defendant McDaniel.

[5] *Id.* ¶¶ 54-70.

[6] Doc. no. 35 (Motion to Dismiss).

complaint for, among other reasons, "lack of subject-matter jurisdiction."  Fed. R.

Civ. P. 12(b)(1).  Further, Federal Rule of Civil Procedure 12(h) provides that, "[i]f

the court determines at any time that it lacks subject-matter jurisdiction, the court

*must* dismiss the action."  Fed. R. Civ. P. 12(h)(3) (alteration and emphasis supplied).

Because federal jurisdiction is limited to certain types of cases, "the party invoking

the court's jurisdiction bears the burden of proving, by a preponderance of the

evidence, facts supporting the existence of federal jurisdiction."  *McCormick v.*

*Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (citing *Scoggins v. Pollock*, 727 F.2d

1025, 1026 (11th Cir. 1984)).

> Attacks on subject matter jurisdiction under Rule 12(b)(1) come
> in two forms, "facial" and "factual" attacks.  *Lawrence v. Dunbar*, 919
> F.2d 1525, 1528-29 (11th Cir. 1990).  Facial attacks challenge subject
> matter jurisdiction based on the allegations in the complaint, and the
> district court takes the allegations as true in deciding whether to grant
> the motion.  *Id.* at 1529.  Factual attacks challenge subject matter
> jurisdiction in fact, irrespective of the pleadings.  *Id.*  In resolving a
> factual attack, the district court may consider extrinsic evidence such as
> testimony and affidavits.  *Id.*

*Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

Additionally, Federal Rule of Civil Procedure 12(b) permits a party to move

to dismiss a complaint for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which

requires that a pleading contain only a "short and plain statement of the claim

3

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While that

pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

*v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to relief that
> is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570.  A claim
> has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. *Id*., at 556.  The plausibility standard
> is not akin to a "probability requirement," but it asks for more than a
> sheer possibility that a defendant has acted unlawfully. *Ibid*.  Where a
> complaint pleads facts that are "merely consistent with" a defendant's
> liability, it "stops short of the line between possibility and plausibility
> of 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

## II.  FACTS AS ALLEGED

As always is the case in the context of ruling upon a motion to dismiss, the

district court is required to assume that

> the facts set forth in the plaintiff's complaint are true.  *See Anza* [*v. Ideal
> Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994
> [(2006]) (stating that on a motion to dismiss, the court must "accept as
> true the factual allegations in the amended complaint"); *Marsh v. Butler
> County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth
> the facts in the case by "[a]ccepting all well-pleaded factual allegations
> (with reasonable inferences drawn favorably to Plaintiffs) in the

complaint as true").   Because we must accept the allegations of
plaintiff's complaint as true, what we set out in this opinion as "the
facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006)

(alterations supplied).

On March 21, 2010, William and Wendy Roddy, accompanied by their three

children and a friend, were staying at the Embassy Suites hotel in Huntsville to

celebrate the birthday of one of the children.[7]   While William M. Roddy was in the

lobby of the hotel, an unnamed person noticed a handgun allegedly protruding from

the pocket of Mr. Roddy's pants and called the police.[8]   Mr. Roddy and one of his

sons then went to their room.[9]

As Mr. Roddy was leaving his room, the Huntsville police arrived.[10]   Mr.

Roddy showed the police his gun and permit to carry the gun.[11]   The officers pushed

Mr. Roddy against the wall, manhandled, and frisked him.[12]   At the time, Mr. Roddy

---

[7] Doc. no. 26 (Amended Complaint) ¶ 14.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 15.   Throughout the amended complaint, plaintiffs inconsistently use various designations for various defendants, including "Huntsville defendants," "Sheffield defendants," "individual defendants," "Huntsville police," "defendant officers," "police officers," "other police officers," "defendants," "police," and "officers."   In order to convey plaintiffs' meaning as closely as possible, this summary will use the same terms that were used in the amended complaint, regardless of consistency.

[11] *Id.*

[12] *Id.*

had a pill bottle in his pocket that contained medication for his son's attention deficit hyperactivity disorder (ADHD).[13]

Shortly thereafter, other police officers entered Mr. Roddy's hotel room.[14] Those officers were dressed in combat gear, and included the individual defendants, *i.e.*, Jason M. Ramsey, Terry Lucas, and Eddie McDaniel.[15]  The officers began searching the room.[16]  In the process of doing so, the officers broke the lock on a briefcase.[17]  The officers found unspecified prescription medication,[18] and placed Mr. Roddy under arrest for "Trafficking in Heroin."[19]

Sometime later, Mrs. Roddy entered the room.[20]  The officers harassed Mrs. Roddy,[21] informed her that they had found illegal drugs in the room, and told her that her husband was selling drugs and would go to jail.[22]  Mrs. Roddy informed the

---

[13] Doc. no. 26 (Amended Complaint) ¶ 15.

[14] *Id.* ¶ 16.

[15] *Id.*

[16] *Id.* ¶ 17.

[17] *Id.*

[18] It is not clear whether the prescription medication that the officers found was the ADHD medication that Mr. Roddy had in his pocket.

[19] *Id.*  Plaintiffs place the term "Trafficking in Heroin" in quotation marks.  *Id.*  If the term is, in fact, intended to be a quotation, plaintiffs do not specify the person who said it, or the document(s) upon which the words were written or typed.

[20] Doc. no. 26 (Amended Complaint) ¶ 17.

[21] In a parenthetical, plaintiffs indicate that the officers who allegedly harassed Mrs. Roddy "'include Huntsville Police Department employees and the individual defendants."  *Id.* ¶ 18.

[22] *Id.*

officers that the drugs were legal, prescription medications that had been prescribed for members of the family, and that Mr. Roddy was a physician who was licensed to possess all the medications that were found in the room.[23]  The officers "screamed at Mrs. Roddy and accused her of lying."[24]  Although Mrs. Roddy became extremely upset, the officers continued to harass her, and tell her that she had better tell them the truth.[25]  Mrs. Roddy gave the officers the name of Mr. Roddy's physician and pharmacy.[26]

The defendant officers poured the contents of Mrs. Roddy's purse onto the bed, and opened bottles of over-the-counter (OTC) medications, while continuing to curse and harass her.[27]  Mrs. Roddy informed the officers "that all the medicine was prescribed medicine that she and her family had the right to possess."[28]  The officers ransacked the room, while screaming at plaintiffs concerning the location of illegal drugs.[29]  At one point, the officers told Mrs. Roddy that her husband was having an

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Doc. no. 26 (Amended Complaint) ¶ 18.

[27] *Id.* ¶ 19.

[28] *Id.*  The term "over-the-counter medications" generally indicates medications that are available without a prescription.  Thus, it is not clear what Mrs. Roddy meant when she told the officers, who were allegedly opening bottles of over-the-counter medications, that "all the medicine was prescribed medicine."

[29] *Id.* ¶ 21.

7

affair.[30]  Further, the defendants found some documents relating to the children's school grades in Mrs. Roddy's purse, and one of the officers made certain, unspecified remarks about the children.[31]

While the defendant officers were in the room, $200 in cash was removed from Mrs. Roddy's wallet, $75 in cash was removed from the wallet of one of the children, and all the cash was placed in the pocket of Officer Ramsey.[32]  Additionally, the defendant officers took possession of five passports.[33]

Ultimately, none of the drugs found in the room were determined to be "illegal."[34]  Despite the fact that plaintiffs allegedly had every right to possess the medications found in the hotel room, they were arrested for "Trafficking in Heroin" and taken to jail.[35]  Plaintiffs were eventually released on $250,000 bail.[36]

On the date of the search, the Huntsville defendants called the Sheffield Police Department, informed "Sheffield"[37] that plaintiffs had been arrested for "Trafficking

---

[30] *Id.* ¶ 20.

[31] *Id.* ¶ 22.

[32] Doc. no. 26 (Amended Complaint) ¶ 24.  Because plaintiffs made these allegations in the passive voice, it is not clear who removed the cash from the wallets, and who placed the cash in Officer Ramsey's pocket.

[33] *Id.*

[34] *Id.* ¶ 21.

[35] *Id.* ¶ 23.

[36] *Id.*

[37] Plaintiffs define "Sheffield" to indicate the City of Sheffield.  *Id.* ¶ 10.

8

in Heroin," and provided the "Sheffield defendants"[38] with unspecified "erroneous and exaggerated information."[39]  That same day, the "Sheffield defendants" allegedly conducted an illegal search of plaintiffs' home.[40]  Belongings were seized, property was severely damaged, and a safe in the home was destroyed.[41]  Plaintiffs arrived to find the home ransacked, and the back doors broken.[42]

The fact that plaintiffs had been arrested for "Trafficking in Heroin" was aired on television and published in Florence and Huntsville newspapers.[43]  After the arrest, plaintiffs provided the Huntsville defendants and the Madison County District Attorney's Office with detailed information concerning their lawful possession of the medications found in their hotel room.[44]  The Huntsville defendants refused to drop the charges, but did not prosecute the charges.[45]  At least eight grand juries were convened without the cases against plaintiffs being presented.[46]  On January 21, 2011,

---

[38] Throughout the amended complaint, plaintiffs use the term "Sheffield defendants" without defining who or what they mean.  Even so, this summary will use the same term that was used in the amended complaint.

[39] Doc. no. 26 (Amended Complaint) ¶ 25.

[40] *Id.*

[41] *Id.*  Because plaintiffs made these allegations in the passive voice, it is not clear who seized the belongings, damaged the property, and destroyed the safe.

[42] *Id.* ¶ 26.

[43] *Id.* ¶ 27.

[44] *Id.* ¶ 28.

[45] Doc. no. 26 (Amended Complaint) ¶ 29.

[46] *Id.*

9

the charges against plaintiffs were dismissed.[47]

## III. DISCUSSION

### A.   Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)

Plaintiffs assert supplemental state-law claims against "Huntsville" for false arrest/false imprisonment, excessive force, malicious prosecution, conversion, and outrage.[48]   Defendant Eddie McDaniel argues that he has been a Deputy Sheriff employed by the Sheriff of Madison County since October of 1997,[49] and plaintiffs do not dispute the truth of that assertion.[50]   Thus, defendant McDaniel correctly argues that sovereign immunity bars plaintiffs' state-law claims against him.[51]

The Alabama State Constitution provides that "the State of Alabama shall *never* be made a defendant in any court of law or equity."   Ala. Const. art. I, § 14 (1901) (emphasis supplied).   The Eleventh Circuit has expressly held that "both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14."   *Tinney v. Shores*, 77 F.3d 378, 383, 383 n.3 (11th Cir.

---

[47] *Id.* ¶ 30.

[48] *Id.* ¶¶ 54-70.   As noted in footnote 4, *supra*, it is not clear whether plaintiffs intend "Huntsville," (*see id.* ¶ 19), to indicate the Huntsville defendants or the City of Huntsville.  Even so, this court will assume that plaintiffs mean the Huntsville defendants, and address the arguments in favor of dismissing the state-law claims against defendant McDaniel.

[49] Doc. no. 36 (Brief in Support of Motion to Dismiss), at 7.

[50] *See* doc. no. 45 (Response to Motion to Dismiss), at 1-2.

[51] *See* doc. no. 35 (Motion to Dismiss), at 2.

1996) (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987); *Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989); *Drain v. Odom*, 631 So. 2d 971, 972 (Ala. 1994); *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989); *Gill v. Sewell*, 356 So. 2d 1196, 1198 (Ala. 1978)).  Likewise, the Alabama Supreme Court has stated that "Article I, § 14, of the Alabama Constitution of 1901 thus removes subject-matter jurisdiction from the courts when an action is determined to be one against the State." *Alabama State Docks Terminal Railroad v. Lyles*, 797 So. 2d 432, 435 (Ala. 2001).

After expressing their displeasure with Alabama law, plaintiffs appear to concede that defendant Eddie McDaniel is immune from suit.[52]  Plaintiffs' two-paragraph treatment of sovereign immunity states:

> At the time of filing the First Amended Complaint, plaintiffs did not know that defendant McDaniel was an employee of the Madison County Sheriff.  Plaintiffs concede that, under current Alabama law, sheriffs and their direct deputies are absolutely immune from state law claims.

> Plaintiffs do want to say that Alabama law on this point is absurd and unfair.  It defies logic that an employee of a sheriff's department is not responsible for the same acts as a police department employee.  Is that not ridiculous?  It certainly is.  However, this is not the case or the forum to attack this law.  We will leave it there.[53]

In sum, defendant McDaniel enjoys immunity from suit for state-law torts that

---

[52] *See* doc. no. 45 (Response to Motion to Dismiss), at 1-2.

[53] *Id.*

11

arose from the execution of his official duties as a Deputy Sheriff.  Because this court

lacks subject matter jurisdiction over plaintiffs' state-law claims against defendant

McDaniel, and because plaintiffs have advanced no *legal* arguments opposing the

motion to dismiss, the motion will be granted.

## B.      Failure to State a Claim Upon Which Relief Can Be Granted Under Federal Rule of Civil Procedure 12(b)(6)

Plaintiffs assert claims under the United States Constitution and 42 U.S.C. §

1983 against the "Huntsville defendants" for an illegal search, for unlawful seizure,

arrest, and imprisonment, and for use of excessive force in effecting the arrests.[54]

Again, defendant McDaniel correctly argues that plaintiffs "have failed to allege with

any degree of particularity the acts or omissions of defendant McDaniel directly

affecting them," and that their federal-law claims are likewise due to be dismissed.[55]

Plaintiffs' amended complaint mentions defendant Eddie McDaniel's name

only three times, each time without specifically linking this defendant to any

wrongdoing.  For example, plaintiffs allege that:  "[d]efendant Eddie McDaniel was

employed by Huntsville or other law enforcement organization as a police officer

---

[54] Doc. no. 26 (Amended Complaint) ¶¶ 34-48.  As noted in footnote 2, *supra*, plaintiffs define the term "Huntsville defendants" to include defendant McDaniel, doc. no. 26 (Amended Complaint) ¶ 9, despite the fact that he appears to be a Deputy Sheriff employed by the Sheriff of *Madison County* since October of 1997.  *See* docs. no. 36 (Brief in Support of Motion to Dismiss), at 7; 45 (Response to Motion to Dismiss), at 1-2.

[55] Doc. no. 35 (Motion to Dismiss), at 1-2.

assigned to the STAC[56] Unit at all times relevant to the allegations in this complaint"; that he "is a resident and citizen of the State of Alabama," and "is sued in his individual capacity"[57]; that "Huntsville, Ramsey, Lucas and McDaniel may hereafter be referred to collectively as 'the Huntsville defendants'";[58] and that "[t]he prosecution of plaintiffs by the Huntsville individual defendants Ramsey, Lucas and McDaniel was wrongful, malicious and without probable cause."[59]

Throughout the remainder of their amended complaint, plaintiffs inconsistently refer to various defendants by various designations, including "Huntsville defendants," "Sheffield defendants," "individual defendants," "Huntsville police," "defendant officers," "police officers," "other police officers," "defendants," "police," and "officers."   Plaintiffs only define two such terms.   They first specify that "Huntsville, Ramsey, Lucas and McDaniel may hereafter be referred to collectively as 'the Huntsville defendants.'"[60] They also state in a parenthetical that "'officers' include Huntsville Police Department employees and the individual defendants."[61]

---

[56] The term "STAC" is obviously an acronym, but plaintiffs do not specify what it stands for.

[57] Doc. no. 26 (Amended Complaint) ¶ 8 (alteration supplied).

[58] *Id.* ¶ 9.

[59] *Id.* ¶ 62 (alteration supplied).

[60] *Id.* ¶ 9.

[61] *Id.* ¶ 18.   The term "Huntsville Police Department employees" does not appear anywhere else in plaintiffs' amended complaint.   Plaintiffs do not identify the so-called "Huntsville Police Department employees," or explain their role in the events at issue.

It is not clear whether plaintiffs intend that definition of the term "officers" to apply only to the sentence in which it appears, or to the entirety of the complaint.

The designation of "Sheffield defendants" is particularly puzzling. Throughout the amended complaint, plaintiffs use the term "Sheffield defendants" in the plural without defining who or what they mean. Upon reviewing the original and amended complaints, this court has only identified one potential Sheffield defendant: *i.e.*, the City of Sheffield, which was dismissed from the case without prejudice pursuant to the parties' joint stipulation of dismissal.[62] Defendants Clarence M. Thornberry, Brett McCulley, Dewayne McCarver, and Anthony E. McElyea, who also were dismissed from the case, were alleged to be *Huntsville* police officers.[63] Likewise, defendants City of Huntsville, Jason M. Ramsey, Terry Lucas, and Eddie McDaniel, who remain in the case, were defined as the *Huntsville* defendants.[64]

However, based on plaintiffs' allegations, it is logically impossible for the only Sheffield defendant to be the City of Sheffield, Alabama. Plaintiffs accuse the Sheffield defendants of illegally searching their home.[65] Because a city cannot search a home without acting through its agents, the term "Sheffield defendants" *must*

---

[62] Doc. nos. 27 (Stipulation of Dismissal), 28 (Order Entered March 30, 2012).

[63] Doc. no. 1 (Complaint) ¶¶ 7, 9-11.

[64] Doc. no. 26 (Amended Complaint) ¶ 9.

[65] *Id.* ¶ 25.

14

include at least one individual officer.

The only designation that appears in plaintiffs' amended complaint which is factually applicable to defendant Eddie McDaniel is "defendant."   As was first observed in footnote 2, *supra*, defendant Eddie McDaniel argues that he has been a *Deputy Sheriff* employed by the Sheriff of *Madison County* since October of 1997,[66] and plaintiffs do not dispute the truth of that assertion.[67]   Thus, he technically is not a "Huntsville defendant," nor a "Sheffield defendant," nor a "police officer." However, plaintiffs argue that, "[a]t the time of filing the First Amended Complaint, plaintiffs did not know that defendant McDaniel was an employee of the Madison County Sheriff,"[68] and expressly include him in their definition of the term "Huntsville defendants."[69]   Thus, plaintiffs *may* likewise intend to include defendant Eddie McDaniel in some or all of the other designations that do not factually apply to him, such as "Huntsville police" and "police officers."   In sum, defendant Eddie McDaniel correctly argues that:

> The First Amended Complaint does not provide Deputy McDaniel fair notice of the discrete allegations concerning him.  In virtually every paragraph of the First Amended Complaint, the Roddys contend the "the Huntsville defendants" acted in some manner.  *See, e.g.*, doc. no. 26 at

---

[66] Doc. no. 36 (Brief in Support of Motion to Dismiss), at 7.

[67] *See* doc. no. 45 (Response to Motion to Dismiss), at 1-2.

[68] *Id.* at 1 (alteration supplied).

[69] Doc. no. 26 (Amended Complaint) ¶ 9.

15

¶¶ 34, 39, 44, 54, 58, 62, 65, and 68.  The lack of clarity in the pleading of the Roddys' claims and specificity as to *each* defendant places Deputy McDaniel in the position of guessing who an allegation or claim is directed toward for purposes of his answer or assertion of affirmative defenses.

      Instead of specifically pleading the who, what, when, where, and how of their cause of action, the Roddys rely on conclusory assertions concerning the acts or omissions of "the Huntsville defendants" or "officers" (which includes both "the individual defendants" and unidentified "Huntsville Police Department employees").  *Id.* at ¶ 18.  For instance, the Roddys contend "[t]he defendant officers poured Mrs. Roddy's purse on the bed. . . ." *Id.* at ¶ 19.  Certainly, the Roddys do not contend that each of the "defendant officers" held Mrs. Roddys purse and they simultaneously poured the contents of the purse out on the bed, or that each of the "defendant officers" took a turn pouring the contents of Mrs. Roddys purse out on the bed after it was repacked from the previous emptying.  And, surely the Roddys do not contend that each of "the individual defendants" and all of the unidentified "Huntsville Police Department employees" separately "informed [Mrs. Roddy] that they had found illegal drugs in the room." *Id.* at ¶ 18.  This ambiguous and non-specific pleading appears intended to avoid dealing with defenses such as qualified immunity on the front-end of the case.[70]

In response, plaintiffs contend that the amended complaint satisfies the federal pleading standard, but then concede that the sequence of events was "unfathomable," that "[p]laintiffs did not get names and addresses," and that the perpetrators were "three narc officers and several uniformed officers," again without providing any clues as to their identities.[71]  In *Ross v. Alabama*, 893 F. Supp. 1545 (M.D. Ala.

---

[70] Doc. no. 36 (Brief in Support of Motion to Dismiss), at 10-11.

[71] Doc. no. 45 (Response to Motion to Dismiss), at 2 (alteration supplied).  If the statement that "[p]laintiffs did not get names and addresses" is intended as sarcasm, it is not appropriate.

1995), the court held that the plaintiffs' allegations were "so obscure and incomplete as to fail even under notice pleading" because, as here, the plaintiffs *"generically lump Parsons together with all other parties as 'defendants'"*; because the plaintiffs "fail to aver even one act of Parsons that allegedly deprived them of their constitutional rights; and because, "from reading the complaint, the court has no idea what the basis of liability is as to Parsons." *Id.* at 1554 (emphasis supplied).

The pleading standards articulated in Federal Rule of Civil Procedure 12(b)(6), *Twombly*, 544 U.S. 544, 550 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), require plaintiffs to plead with particularly, by stating *which* defendant committed *which* alleged misconduct.  Plaintiffs have failed to do so.  Accordingly, defendant Eddie McDaniel's motion to dismiss plaintiffs' federal-law claims is due to be granted.

## IV.  CONCLUSION AND ORDER

For the reasons explained above, the state-law claims against defendant Eddie McDaniel are DISMISSED *with* prejudice for lack of subject matter jurisdiction, and the federal-law claims against him are DISMISSED *without* prejudice for failure to comply with federal pleading standards.

DONE and ORDERED this 5th day of November, 2012.

United States District Judge